SCHOTT, Judge.
Defendant School Board has appealed from a judgment ordering it to reinstate as of June 13, 1973, the four plaintiffs, Julius P. Palone, Gerard Heslin, Mildred Heard and Frank Dalferes, to positions of Assistant Principals.
In 1970 the Board implemented a policy of assigning an* additional assistant principal at each high school or platoon thereof, and in connection therewith on July 14, 1970, appointed Palone as Assistant Principal at Bonnabel High School, Mrs. Heard as Assistant Principal at L. W. *209 Higgins High School, and Heslin as Assistant Principal at Riverdale High School. Each of these plaintiffs had previously occupied a tenured position as a teacher in the school system. Plaintiff Dalferes was appointed Assistant Principal at East Jefferson High School on August 5, 1972, from his previously tenured position as Head Coach of the School.
On June 13, 1973, the Board adopted a resolution “that the second Assistant Principal position be abolished in each high school and in each platoon session.” Pursuant thereto the four plaintiffs were returned either to their previously tenured positions or in one instance to a higher position, but in all cases the result was a substantial reduction in salary. Significantly, Palone, Mrs. Heard, and Heslin were on the verge of acquiring tenure in their positions as assistant principals at the time their positions were abolished.
Plaintiffs maintain that the Board’s action which was taken without written recommendation of the Parish Superintendent of Schools was in violation of the following provisions of LSA-R.S. 17:442:
“Each teacher shall serve a probationary term of three years to be reckoned from the date of his first appointment in the parish or city in which the teacher is serving his probation. During the probationary term the parish or city school board, as the case may be, may dismiss or discharge any probationary teacher upon the written recommendation of the parish or city superintendent of schools, as the case may be, accompanied by valid reasons therefor.”
Plaintiffs also contend that the resolution was adopted in bad faith and with the intention to circumvent the teachers’ tenure law found in LSA-R.S. 17:441 ét seq. and that the Board’s action was in bad faith, was arbitrary and capricious because it was taken under the guise of an economy measure when, in fact, no substantial savings if any were effected by the Board’s action in abolishing the positions held by plaintiffs.
In his reasons for judgment the trial judge made the following findings :
“It is apparent, therefore, that there is no ‘second assistant principal position’ to be abolished. The school board abolished certain openings within a positioned category. It did not abolish all assistant principals, nor did it delete the functions of the position. Instead it spread the duties of said positions among other teachers.
“The attempt to abolish a position without abolishing the duties and functions of said position is contrary to the letter and spirit of a teacher tenure system.” (Citing cases from other jurisdictions)
The trial judge reasoned that the abolition of the position held by the plaintiffs constituted a demotion of plaintiffs without complying with the requirements of R. S. 17:442 and in violation of the provisions of R.S. 17:444, as follows:
“Whenever a teacher who has acquired permanent status, as set forth in R.S. 17:442 and 17:443, in a parish or city school system is promoted by the employing school board by moving such teacher from a position of lower salary to one of higher salary, such teacher shall serve a probationary period of three years in the higher position before acquiring permanent status therein, but shall retain the permanent status acquired in the lower position from which he or she was promoted.
“During the probationary period in the position to which promoted a teacher shall not be disciplined, removed or demoted to the lower position from which he or she was promoted except in compliance with the provisions of R.S. 17:442. At the expiration of the probationary period in the higher position, a teacher, unless removed or demoted in accordance with R.S. 17:442, shall auto *210 matically acquire permanent status in the higher position and thereafter may not be disciplined, removed or demoted from such higher position except in compliance with the provisions of R.S. 17:443.”
The central issue to be resolved in this case is whether the action of the School Board in abolishing plaintiffs’ positions was such that R.S. 17:442 and 17:444 were applicable and specifically whether the written recommendation of the superintendent was a prerequisite to the Board’s action in the case.
Members of the School Board and of the administrative staff of the Board testified that the Board’s action was taken as an economy measure and resulted in a saving of approximately $50,000. There had been prior to the 1973 action a total of 18 assistant principals and the result of the action was the elimination of nine of these jobs. Of the nine three had acquired tenure in their new positions and as a practical matter were not affected by the Board’s action, and of the six remaining the four plaintiffs initiated these proceedings.
The plain wording of R.S. 17:442 reveals that this statute is concerned with action taken regarding an individual teacher whose dismissal or discharge is at issue. This becomes especially obvious upon a reading of the second paragraph of the statute which has to do with the procedure applicable to a teacher who has gained tenure and which paragraph begins “Any teacher found unsatisfactory . . .,” clearly demonstrating that the statute must be implemented in connection with the removal or dismissal of a teacher who is performing duties or engaged in conduct which is unsatisfactory. R.S. 17:444 modifies and relates itself to 17:442, and speaks of removal or demotion in the same context as that of discipline, suggesting clearly that this statute has to do with action taken by the board with respect to an individual teacher.
The action of the Board in the instant case did not address itself to any individual teacher, and certainly not to any one of the plaintiffs. The testimony shows that the Board did not even know the identity of the persons who would be affected by its action and although the Board was aware of the fact that some of those affected would acquire tenure in their positions as assistant principals unless the action was taken at that time, they were motivated not by any wish to prevent the individuals from acquiring tenure but rather by a desire to effect as much of a saving as possible, it being understood that any delay in their action would result in some of the probationary assistant principals, including three of the plaintiffs, acquiring tenure and thereby necessitating payment to them of salaries as assistant principals even if the jobs were thereafter abolished. The testimony of Mr. Sidney Rosenthal, Jr., a member of the School Board, is especially significant in this connection, where he explained that the Board’s action was not taken pursuant to a recommendation by the superintendent:
“Now I’m not going to agree with that, Mr. Greenberg, because I don’t believe —in my opinion, on the night of the resolution the board did not demote anyone. The board established a policy of abolishing a job position within the school system. That’s all it did. It did not designate any teacher, any person, to be demoted, or transferred in any way. It és-tablished a policy for this school system of eliminating a position in every high school in this parish.”
There is a distinction in the facts of this case and those before the Court in State v. Vernon Parish School Board, 222 La. 91, 62 So.2d 111, where the Supreme Court ordered reinstatement of a dismissed probationary teacher to his position of supervisor of classroom instruction upon a finding that after the plaintiff had served in that capacity for two years and upon offering his services to the board for the *211 third year he was informed by the superintendent that “his job had been abolished and his services were not desired.” In the instant case no individual was dismissed and no individual job was abolished. On the contrary, the Board decided to do away with 50% of all the assistant principals in the high schools and the result was that the last ones appointed to the positions would necessarily be the first ones out in accordance with the seniority system employed by the Board. A school board has the duty of running the best possible school system with the least expense to the taxpayers and in the most efficient manner. Certainly the board may in its wisdom determine that it can only afford so many supervisors, so many principals, so many teachers, or so many other specialized personnel. If it finds it advisable to make a reduction in numbers of such personnel it certainly has the authority to do so, 'and in the absence of a showing that the action taken is directed against some single individual the provisions of R.S. 17:442 and 17:444 are not applicable.
The facts of the case do not support plaintiffs’ contention that when their jobs were abolished they nevertheless were required to continue with their same duties even though they had been deprived of their positions and corresponding emoluments of their offices.
When the Board originally embarked upon the policy of having two assistant principals in each school and platoon thereof, it drafted specifications on the “duties of an assistant principal — academic services” and “duties of an assistant principal —pupil services.” Previous to the creation of the additional position as assistant superintendent, these various duties were performed by the principal and assistant principal, assisted by one or more teachers in each school. A principal could designate a teacher as discipline coordinator and that teacher would perform some of the duties specified among those of the assistant principal in charge of pupil services. Such a discipline coordinator would also receive some additional compensation for his extra duties. After the assistant superintendent positions were abolished two of the plaintiffs, after returning to tenured positions as teachers, were also designated as coordinators of discipline in their respective schools, and while they testified that many of the duties required of them as discipline coordinators were included among the duties specified as assistant principals in charge of pupil services, there is no testimony that any individual teacher in the school system was required after the Board’s action to perform all of the duties one had to perform as assistant principal. An insight into the situation is provided by the testimony of one of the Board members to the effect that ideally, and if unlimited funds were available, the School Board would like to have many more assistant principals and specialized teachers but that the confines of the budget do not permit such an optimum situation. We cannot condemn the Board’s decision to abolish the extra assistant principal position under those circumstances where the duties previously performed by them now reverted to the remaining assistants and the principals with assistance from the teachers in the system.
Finally, there is no merit whatsoever to plaintiffs’ complaint that the amount of the saving effected by the abolition of the extra positions was not sufficient to justify the action taken by the Board. There is much testimony in the record to show that while the School Board was attempting to save this $50,000 they were spending more money in other areas. Plaintiffs take the position that the $50,000 saved was only a “drop in the bucket” of the $45,000,000 plus which the Board was budgeted to spend. The record shows that the Board was trying to reduce its gigantic deficit of over $5,000,000 experienced the previous year; that it was conservatively estimating the income from sales tax revenues; and that many positions in addition to plaintiffs’ were abolished in an effort to *212 curtail expenditures. We have concluded from this record that the Board was only performing its duty to render the best possible service to the people in administering the Jefferson Parish School Board at the least possible expense to the taxpayers and within the framework of the funds provided to it by those taxpayers. We find no basis in this case for our inquiry into such decisions by the Board.
Accordingly, the judgment appealed from is reversed and set aside, and there is judgment in favor of the Jefferson Parish School Board and against the plaintiffs, Julius P. Palone, Gerald Heslin, Mildred Heard and Frank Dalferes, dismissing their suit at their cost.
Reversed and rendered.
MORIAL, J., dissents with written reasons.